NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: DATATEC SYSTEMS, INC. SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | MASTER FILE NO. 04-CV-525 (GEB)<br><br>**MEMORANDUM OPINION** |

      This matter comes before the Court upon: (1) the motion of Lead Plaintiffs for final approval of class action settlement; and (2) the application of Lead Plaintiffs' for an award of attorney's fees and reimbursement of expenses. A fairness hearing was held on September 24, 2007. This Court, having considered the parties' written submissions and oral argument, and for the reasons discussed herein, will grant both motions.

**I.      BACKGROUND**

      This is a securities class action lawsuit brought by lead plaintiffs Yola Sherman, M. Ronald Sherman, Jean T. Beaubien, William E. Garrett, Eugene E. Epstein, and Joan Shalant ("Lead Plaintiffs") on behalf of persons who purchased the common stock of Datatec Systems, Inc. ("Datatec") during the period from June 26, 2003 to December 16, 2003 against Isaac J. Gaon, Raymond R. Koch and Delloitte & Touche LLP ("D&T") (collectively "Defendants").[1]

      Lead Plaintiffs filed a Second Amended Consolidated Class Action Complaint ("Complaint") on October 31, 2005. The Complaint asserts claims based on: (1) section 10(b)

---

[1] The "Class" is more fully defined in the Court's Order Preliminarily Certifying Class, Approving Settlement and Providing for Notice, dated May 9, 2007. As discussed more fully in the order accompanying this opinion, the Court concludes that the prerequisites for a settlement class under Federal Rule of Civil Procedure 23 have been satisfied.

of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder, against each of the Defendants; and (2) section 20(a) of the Exchange Act against Gaon and Koch only.  The Complaint alleged that Datatec, Gaon and Koch engaged in fraudulent schemes resulting in the overstatement of Datatec's financial results and that Defendants knowingly or recklessly made false and misleading statements and omissions during the class period relating to Datatec and its alleged schemes.

On December 22, 2005, Defendants moved to dismiss the Complaint.  On September 29, 2006, the case was reassigned to the undersigned.  On October 30, 2006, this Court dismissed the claims against D&T with prejudice and granted in part and denied in part the motions to dismiss filed by Gaon and Koch.

On April 16, 2007, Lead Plaintiffs and counsel for Gaon and D&T entered into a Stipulation and Agreement of Settlement ("Settlement Agreement").  Pursuant to the Settlement Agreement, D&T and Gaon are required to pay the settlement class a total of $750,000, comprised of a $725,000 contribution from D&T and a $25,000 contribution from Gaon.[2]

On May 9, 2007, the Court entered an Order Preliminarily Certifying Class, Approving Settlement and Providing for Notice ("Preliminary Approval Order").  For purposes of settlement, the Court preliminarily found that the Class satisfied the certification requirements of Federal Rule of Civil Procedure 23(a), (b)(3).  Additionally, the Court preliminarily approved the settlement of the case in accordance with the Settlement Agreement.

Pursuant to the Preliminary Approval Order, notice of the proposed Settlement

---

[2] Lead Plaintiffs assert that they "intend, subject to Court approval, to file a motion for voluntary dismissal without prejudice of Koch after the Court conducts a hearing on final approval of the proposed settlement with D&T and Gaon." Settlement Br. at 3 n.3.

Agreement was sent via first class mail to 5,596 potential members of the Class ("Notice"). Notice was also published in *The Wall Street Journal*. Sommers Decl. ¶ 38. The deadline for Class members to object to the settlement or exclude themselves from the Class was September 4, 2007. No objections were filed in opposition to the proposed Settlement Agreement and no Class member requested to be excluded from the Class.

On September 14, 2007, Lead Plaintiffs filed the present motion for final approval of the Settlement. In addition to final approval of the Settlement Agreement, Lead Plaintiffs seek approval of the plan to allocate the settlement funds ("Plan of Allocation"), as described in the Notice. Settlement Br. at 21-22. The Plan of Allocation provides for different payments to different class members, according to when their Datatec stock was purchased and sold. Id.

Finally, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., counsel for Lead Plaintiffs ("Lead Plaintiffs' Counsel") requests payment of 30% of the settlement fund for attorney's fees and $45,409.63 for expenses. The Notice disclosed that Lead Plaintiffs' Counsel would seek no more than 30% of the settlement fund in fees and $75,000 in expenses. No objections have been filed to the request for attorneys' fees and expenses.

**II.    DISCUSSION**

    **1.    Settlement and Plan of Allocation**

        **A.    Standard of Review For the Judicial Approval of a Class Action Settlement and Plan of Allocation.**

Under Federal Rule of Civil Procedure 23(e), the district court must approve any settlement in a class action, and direct reasonable notice to all class members who may be bound by such settlement. FED.R.CIV.P. 23(e). Approval is warranted only if the settlement is "fair,

reasonable, and adequate." FED.R.CIV.P. 23(e).  Acting as a fiduciary responsible for protecting the rights of absent class members, the court is required to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir.2001) (citations omitted).  This determination rests within the sound discretion of the court.  Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir.1975).

In Girsh, the Third Circuit identified nine factors that a district court should consider when determining whether a proposed class action settlement warrants approval.  Girsh, 521 F.2d at 157.  These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 301 (3d Cir. 2005) (citing Girsh, 521 F.2d at 157). The burden of proving that these factors weigh in favor of approval rests on the proponents of a settlement.  The Girsh factors, however, "do not provide an exhaustive list of factors to be considered when reviewing a proposed settlement." In re AT & T Corp. Sec. Litig., 455 F.3d 160, 165 (3d Cir. 2006).[3]  The Court may take these other factors into consideration, if

---

[3]Other relevant factors include: "[T]he maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or

appropriate, in order to determine whether final approval is warranted.

The "[a]pproval of a plan of allocation of a settlement fund in a class action is 'governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citations omitted); see also Walsh v. Great Atl. & Pac. Tea co., 726 F.2d 956, 964 (3d Cir. 1983) ("The Court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.").

### B. Application of the Girsh Factors

Based on the facts and circumstances of this case, as discussed below, the Court concludes that the Girsh factors indicate that approval of the proposed settlement is warranted.

#### 1. Complexity, Expense and Likely Duration of the Litigation

This securities fraud class action involves accounting and damages issues, the resolution of which would likely require extensive and conceptually difficult expert economic analysis. At trial, Lead Plaintiff would have to prove the elements of their securities fraud claims, including scienter and loss causation. Trial on theses issues would lengthy and costly to the parties. The Settlement provides a benefit for the Class without the expense and delay of further litigation. Accordingly, the Court determines that this factor weighs in favor of approval of the settlement.

#### 2. Reaction of the Class to the Settlement

---

likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998).

As described above, Notice has been given to the Class and no objections to the Settlement have been filed. Moreover, no Class members have sought to exclude themselves from the class. Accordingly, the Court finds that the second Girsh fact weighs strongly in favor of approval. See Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that 29 objectors out of 281 class members "strongly favors settlement"); In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 530 (E.D. Pa. 1990) ("Both the utter absence of objections and the nominal number of shareholders who have exercised their right to opt out of this litigation militate strongly in favor of approval of the settlement").

### 3. Stage of the Proceedings and the Amount of Discovery Completed.

Discovery has not taken place in this case, due to the discovery stay imposed pursuant to the Private Securities Litigation Reform Act of 1995. Although a lack of discovery might ordinarily weigh against approval, here, the Court does not view this as problematic given the dismissal of all of the claims against D&T and half of the claims against Gaon. In light of the Court's ruling of the motions to dismiss and Lead Plaintiffs' review of the publicly available facts, their interview of various former employees of Datatec and the damages analysis performed at the behest of Lead Plaintiffs, the Court concludes that Lead Plaintiffs' have an adequate view of the strengths and weaknesses of this case. Sommers Decl. ¶ 26. For these reasons, the Court accords this factor little weight and concludes that it slightly weighs in favor of approval.

### 4. Risks of Establishing Liability

The risks of continuing this litigation are significant, in part because the Court already

dismissed all of the claims against D&T and many of the claims against Gaon. Moreover, if this case were to go forward, Lead Plaintiffs would face the formidable task of proving scienter and loss causation. Additionally, there is risk associated with trying a case before a jury involving a likely battle of economic experts. Due to these risks, the fourth Girsh factor weighs in favor of approval of the settlement.

### 5. Risks of Establishing Damages

Similarly, were the Lead Plaintiff required to prove damages, there would likely be a "battle of experts" at trial and there would be "no guarantee whom the jury would believe." In re Cendant, 264 F.3d at 239. Defendants and Lead Plaintiffs are likely to disagree over a number of issues related to damages, including, inter alia, the amount, if any, by which Datatec stock was artificially inflated due to the alleged misstatements and omissions, and the number of Datatec shares that were in fact damaged. These risks are avoided by the Settlement. Accordingly, the Court finds that the fifth Girsh factor weighs in favor of approval of the settlement.

### 6. Risks of Maintaining the Class Action Through the Trial

There is a risk that class certification in this case would not be maintained though trial. Undoubtably, Defendants would take discovery on class certification issues, seek to attack the certification of the class and to limit the size of the class. For this reason, the Court concludes that this factor weighs slightly in favor of approval of the settlement.

### 7. Ability of the Defendants to Withstand a Greater Judgment

According to Lead Plaintiffs, defendant Gaon has little or no assets with which to fund a settlement or respond to any judgment. Lead Plaintiffs allege that they could not collect under Gaon's directors and officers insurance because he misrepresented certain facts in his application

for insurance coverage. Settlement Br. at 17; Sommers Decl. at Ex. A. Therefore, Lead Plaintiffs' ability to collect from Gaon is limited to Gaon's own assets. After reviewing confidential financial documents from Gaon, Lead Plaintiffs' counsel asserts that a contribution of $25,000 to the Settlement was a fair and plausible sum.

Although D&T could likely withstand a greater judgment, the Court believes the Settlement to be an good result for the Class given the dismissal with prejudice of the claims against D&T. Therefore, the Court concludes that the seventh Girsh factor weighs in favor of approval.

### 8. Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery

Lead Plaintiffs' counsel asserts that the potential recovery in this litigation is approximately $6,900,000. Settlement Br. at 19. The Settlement of $750,000 represents roughly 10.87% of the possible damages. This percentage is within the range of settlements approved in other securities cases. See In re Cendant, 264 F.3d at 242 & n.22 (referencing article indicating that securities class action settlements generally range between 9% and 14% of the class's total possible damages). Accordingly, the Court concludes that the eighth Girsh factor weighs in favor of approval.

### 9. Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of All the Attendant Risks of Litigation.

Similarly, in light of risks associated with this litigation, the Court concludes that the Settlement is within the range of reasonableness. As discussed above, all of the claims against D&T and half of the claims against Gaon have been dismissed. Further, given the difficulties in proving liability and damages in a jury trial, and Gaon's inability to sustain a significantly higher

judgment, the Court concludes that the Settlement is reasonable in light of the risks of further litigation.  Thus, the final <u>Girsh</u> factor weighs in favor of approval.

        **C.**       **Summary of the <u>Girsh</u> Factors**

In conclusion, the Court finds that the <u>Girsh</u> factors all weigh in favor of approval. Although factors three and six weigh only slightly in favor of approval, none weigh against approval.  The Settlement was reached after arm's-length negotiations between experienced, capable counsel.  No objection has been made to the proposed settlement.  Many of the asserted claims have been dismissed.  As the above analysis demonstrates, the Court concludes that the Settlement represents a good result for the Class considering the substantial risks the Lead Plaintiffs face and the immediate benefits provided.  Accordingly, the Court approves the Settlement.

        **D.**       **The Plan of Allocation of the Settlement Fund Is Fair**

The Plan of Allocation, which is fully described in the Notice, provides for different payments to different class members, according to when their Datatec stock was purchased and sold.  <u>Id.</u>  Lead Plaintiffs alleged that Datatec stock was artificially inflated through the entire class period of June 26, 2003 to December 16, 2003 by approximately $0.49 above its fair market price.  According to Lead Plaintiffs, on December 5, 2003, the alleged artificial inflation "partially ended" when Datatec announced the departure of its Chairman and CEO and retracted earnings estimates that were previously announced.  This announcement allegedly brought the artificial inflation of Datatec stock down to $0.10 above its fair market value.  Lead Plaintiffs claim that it was not until December 17, 2003, when Datatec disclosed the full extent of its earnings restatement that the artificial inflation "ended entirely."  Settlement Br. at 23.

The Plan of Allocation is rational and consistent with Lead Plaintiffs' theory of the case. Although different class members would be paid differently under the Plan of Allocation, plans that allocate money depending on the timing of purchases and sales of the securities at issue are common. See, e.g., In re Michael Milken and Associates Securities Litigation, 150 F.R.D. 57, 67 (S.D.N.Y. 1993) ("In numerous cases courts have approved settlements where the class members receive different percentages of recovery to take into account different factors."). Moreover, no class members have objected to the Plan of Allocation or the Settlement. For these reasons and for the reasons discussed above regarding the Settlement, the Court concludes that the Plan of Allocation is fair, reasonable and adequate.

**2.    Attorney's Fees and Expenses.**

**A.    Standard of Review for Judicial Approval of Attorney's Fees**

The awarding of fees is within the discretion of the court, so long as the court employs the proper legal standards, follows the proper procedures, and makes findings of facts that are not clearly erroneous. In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 727 (3d Cir. 2001). Notwithstanding this deferential standard, a district court is required to clearly articulate the reasons which support its conclusion. Rite Aid, 396 F.3d at 301. The Third Circuit identified several factors that a district court should consider. These factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases.

Rite Aid, 396 F.3d at 301 (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d

Cir. 2000)). The Court need not apply these fee award factors in a formulaic way. Certain factors may be afforded more weight than others. Rite Aid, 396 F.3d at 301. The Third Circuit emphasized in Rite Aid, however, that the district court must engage in a robust assessment of these factors. Rite Aid, 396 F.3d at 302; see also Gunter, 223 F.3d at 196 (vacating district court's ruling because the fee-award issue was resolved in a "cursory and conclusory" fashion).[4]

The Settlement creates a common fund. "Relevant law evidences two basic methods for evaluating the reasonableness of a particular attorneys' fee request -- the lodestar approach and the percentage-of-recovery approach. Each has distinct attributes suiting it to particular types of cases." In re Prudential Ins. Co. of America Sales Practices Litig. (Prudential I), 962 F. Supp. 450, 478 (D.N.J. 1997). The percentage-of-recovery method is used in common fund cases as Courts have determined that "class members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund." In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 128 (D.N.J. 2002). "While either the lodestar or percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." Prudential I, 962 F. Supp. at 478.

### B. Application of the Gunter Factors

The Court concludes that the totality of the <u>Gunter</u> factors weighs in favor of approval of

---

[4]The Third Circuit has stated that three other factors may be relevant to the Court's inquiry: "(1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any 'innovative' terms of settlement." In re AT & T Corp., 455 F. 3d at 165-66 (internal citations omitted).

the fee award for the reasons stated below.  Thus, the Court concludes that the fee requested by Class Counsel is fair and reasonable.

First, the fund created by the Settlement is $750,000 and the Settlement class contains 5,596 members.  For the reasons discussed above, the Settlement is fair and adequate.  The number of persons in the Settlement class is large.  Accordingly, the Court finds that the first factor weighs in favor of granting the fee request.

Second, as described above, there have been no objections to the settlement terms.  The Notice mailed to the Class members specifically stated that Lead Plaintiffs' Counsel would be applying for an award of attorneys fees, not in excess of 30% of the Settlement fund, and for reimbursement of expenses in an amount not to exceed $75,000.  No objections have been made to the request for fees.  Accordingly, the Court concludes that this second factor weighs strongly in favor of approval of the fee request.  See In re AT&T Corp., 455 F.3d at 170 (district court did not abuse discretion in finding that second factor weighed strongly in favor of approval where there were 8 objections out of one million potential class members); Rite Aid, 396 F.3d at 305 (noting that a similarly low level of objection is a "rare phenomenon").

Third, the factor concerning the skill and efficiency of the attorneys prosecuting the action also favors approval of the fee award.  Class Counsel are highly skilled attorneys with experience in securities class action litigation.  See Ex.A to the Sommers Affidavit.  Moreover, the Defendants were represented by highly skilled attorneys from a prominent firm with experience in these matters.  In re Warner Commc'ns Sec. Litig., 618 F.Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsel's work.").

Fourth, the factor relating to the complexity and duration of the litigation also weighs in favor of approval.  As discussed above, securities fraud class actions involving alleged violations of accounting principles are complex actions to prosecute.  Counsel have litigated this case for nearly three years and additional work will likely be necessary in the administration of the Settlement. The Settlement saves the parties substantial time and money.

Fifth,  the risk of nonpayment also weighs in favor of approval.  Lead Plaintiffs' counsel submits that they undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts.  Courts recognize the risk of non-payment as a factor in considering an award of attorneys' fees.  See In re Prudential-Bache Energy Income P'ships Sec. Litig., No. 888, 1994 U.S. Dist. LEXIS 6621, at *16 (E.D. La. May 18, 1994) (stating that "[c]ounsel's contingent fee risk is an important factor in determining the fee award.  Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.").  Further, as discussed above, the ability to collect from Gaon is limited and all of the claims asserted against D&T have been dismissed.  Accordingly, the fifth factor weighs in favor of approval.

Sixth, Lead Plaintiffs' counsel states that they have devoted 1,464.95 hours to the litigation of this action.  Fees Br. at 23.  Although discovery has not taken place in this case, in light of the amount of time spent on this matter and the number of attorneys involved, the Court concludes that the sixth factor weighs slightly in favor of approval.

Finally, the Court must also take into consideration amounts awarded in similar actions when approving attorneys' fees.  Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent

with what an attorney would have received if the fee were negotiated on the open market. In re Remeron Direct Purchaser Antitrust Litig., No. 03-0085, 2005 U.S. Dist. LEXIS 27013, at *42-46 (D.N.J. Nov. 9, 2005).

Concerning the first part of the analysis, the requested fee award in this matter is 30%. This award is similar to settlements in other cases in this circuit. Indeed, "[c]ourts within the Third Circuit often award fees of 25% to 33 1/3% of the recovery." Id. at 44; Rite Aid, 396 F.3d at 306-307 (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71% with a median value that "turns out to be one-third"); In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995) (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund").

The second part of this analysis involves whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace. The percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee which would be negotiated if the lawyer were offering the services in the private marketplace. In re Remeron, 2005 U.S. Dist. LEXIS 27013, * 46. "The object . . . is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible." In re Continental Illinois Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992). To determine the market price for an attorney's services, the Court should look to evidence of negotiated fee arrangements in comparable litigation. Id. at 573 (stating that the judge must try to simulate the market "by obtaining evidence about the terms of retention in similar suits, which differ only because, as they are not class actions, the market fixes the terms"). "Attorneys regularly contract for contingent fees

14

between 30% and 40% with their clients in non-class, commercial litigation." In re Remeron, 2005 U.S. Dist. LEXIS 27013, at * 46; see also In re Ikon, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("in private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"). Accordingly, Class Counsel's requested fee amount is within the range of privately negotiated contingent fees.

   C.  **Lodestar Crosscheck**

The Third Circuit has stated that when an award is based on percentage of recovery, it is sensible to confirm the reasonableness of the award using the lodestar method. Rite Aid, 396 F.3d at 305-06. The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." Id. at 305. When performing this analysis, the court "should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." Id. at 306. The so-called "lodestar multiplier" is equal to the proposed fee award divided by the product of the total hours and the blended billing rate. If the lodestar multiplier is large, the award calculated under the percentage-of-recovery method may be deemed unreasonable, and the Court may consider reducing the award. Id. at 306. The lodestar multiplier, however, "need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award." Id. at 307. Further, the court is not required to engage in this analysis with mathematical precision or "bean-counting." Id. at 306. Instead, the court may rely on summaries submitted by the attorneys, and is not required to scrutinize every billing record. Id. at 306-07.

15

Reasonable attorney rates are determined by reference to the marketplace. Missouri v. Jenkins, 491 U.S. 274, 285 (1989) ("we have consistently looked to the marketplace as our guide to what is 'reasonable'"). To establish a market rate, the prevailing party must offer evidence that the attorney's usual rate is in line with the market rate in the community. Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). This evidence often takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate. Glover v. Johnson, 934 F.2d 703, 716 (6th Cir. 1991). The market rate to be used is the current prevailing market rate at the time the request for fees is made. Lanni v. New Jersey, 259 F.3d 146, 149-50 (3d Cir. 2001).

Although Lead Plaintiffs' Counsel submitted a summary detailing the hours, costs and billing rates for their attorneys and paraprofessionals through August 28, 2007, Lead Plaintiffs' counsel did not offer evidence in support of the prevailing market rates during the time that this litigation was pending. The hourly rates used by Lead Plaintiffs' counsel range from $130.00 for the least expensive paralegal to $675.00 for the most expensive partner. The blended hourly rate for all individuals working for Lead Plaintiffs' counsel is approximately $397.63. In light of the lack of objections to this rate and the experience of Lead Plaintiffs' counsel, the Court will consider these rates reasonable.

Class Counsel submits that the total number of hours expended by the attorneys and paraprofessionals in this case by August 28, 2007 is 1,146.95 hours. See Sommers Affidavit ¶ 4. Lead Plaintiffs' counsel claims that its lodestar base through August 28, 2007 is $582,506.25. The proposed fee award presented by Lead Plaintiffs' counsel is 30% of the settlement, or $225,000. This results in a lodestar multiplier of approximately 0.39, well within the accepted range. See, e.g. In re AT&T Corp., 455 F.3d at 173 ("we think a multiplier of 1.28 is well

within a reasonable range"); Prudential I, 148 F.3d 283, 341 (3d Cir.1998) ("'[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied'") (citations omitted). Thus the lodestar cross-check confirms the reasonableness of the reward request.

### D.     Reimbursement of Expenditures

Lead Plaintiffs' Counsel requests reimbursement for expenses incurred during this litigation. Lead Plaintiffs' Counsel incurred expenses in the amount of $45,409.63 through September 7, 2007. Sommers Aff. ¶ 5. "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." In re Safety Components, Inc. Sec. Litig., 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir. 1995)). Lead Plaintiffs' counsel asserts that these expenses reflect costs expended for the purposes of litigating this action, including costs associated with experts, consultants, investigators, legal research, mediation, meals, hotels, transportation, word processing, court fees, mailing, postage, telephone, telephone, and the costs of giving notice. Sommers Aff. ¶ 5. The Court concludes that although Lead Plaintiffs' Counsel did not detail their exact expenditures, based on the information provided, and the lack of any opposition, the expenses were reasonably and appropriately incurred during the prosecution of this litigation. Accordingly, the Court approves Lead Plaintiffs' Counsel's request for reimbursement.

## III.   CONCLUSION

For the foregoing reasons, the Court grants the motion for final approval of the Settlement and the request of Lead Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of

expenses.  The appropriate form of Order accompanies this Memorandum Opinion.


Dated: November 28, 2007


                                                                                 s/ Garrett E. Brown, Jr.
                                                          GARRETT E. BROWN, JR., U.S.D.J.